## UNITED STATES BANKRUPTCY COURT
### WESTERN DISTRICT OF KENTUCKY

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| JESSICA LINDSEY MAY | ) | CASE NO. 23-50053 |
| | ) | CHAPTER 7 |
| Debtor | ) | |
| _____ | ) | |
| | | |
| ROBIN DAVIS, Administratrix of the Estate of | ) | |
| THOMAS WAYNE KENNEY | ) | |
| Plaintiff | ) | |
| vs. | ) | A.P. No. 23-5003 |
| JESSICA LINDSEY MAY | ) | |
| Defendant | ) | |
| _____ | ) | |

### MEMORANDUM ON MOTIONS FOR SUMMARY JUDGMENT

This adversary proceeding comes before the Court on the Motion for Summary Judgment filed by the Plaintiff, Robin Davis, Administratrix of the Estate of Thomas Wayne Kenney ("Plaintiff"). The Debtor / Defendant Jessica Lindsey May ("Defendant") filed an objection to the Motion for Summary Judgment and her own Counter Motion for Summary Judgment, to which the Plaintiff objected. Upon consideration of the motions, their supporting exhibits, and the record in this case, the Court concludes that there is no genuine issue of material fact and that the Plaintiff's Motion for Summary Judgment should be granted and the Defendant's Motion for Summary Judgment should be denied.

## I.      STATEMENT OF JURISDICTION

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334, and it is a core proceeding under 28 U.S.C. § 157(b)(2)(I). Venue is proper under 28 U.S.C. §1409(a).

## II.      SUMMARY JUDGMENT STANDARD

The Court can render summary judgment only when there is no genuine issue of material fact

and the moving party is entitled to judgment as a matter of law.  Fed. R. Bankr. P. 7056(c).
Summary judgment is appropriate when the record taken as a whole, and viewed in the light most
favorable to the nonmoving party, could not lead a rational trier of fact to find for the nonmoving
party.  *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (*citing First
Nat'l Bank v. Cities Service Co.*, 391 U.S. 253, 289 (1968)).  Summary judgment is appropriate only
when no genuine issue of material fact remains, and the moving party is entitled to judgment as a
matter of law.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 91 L. Ed. 2d 265
(1986) (*citing* Fed. R. Civ. P. 56(a)).

Once the moving party has made a proper motion for summary judgment, the nonmoving
party may not rely upon mere allegations to rebut the motion, but instead must set forth specific facts
demonstrating that a genuine issue of material fact exists for trial. Fed. R. Civ. P. 56(e).  The
nonmoving party must produce more than a "mere scintilla" of evidence to support its claim, once
a properly supported motion for summary judgment has been made.

## III.    FACTS[1]

1.    On November 29, 2017, Dale Davis and Robin Davis were appointed as guardians of
Thomas Wayne Kenney by Order of the McCracken County District Court in the case of In
re: Thomas Wayne Kenney, 17-H-149-1.

2.    Thomas Wayne Kenney ("Decedent") died intestate on November 27, 2020.

3.    Prior to his death, the Decedent owned three (3) accounts held by Edward Jones and

---

[1] The majority of the following facts are taken from this Court's previous order granting the Defendant's Motion to Avoid Lien which was entered in the main bankruptcy case on June 15, 2023.  *See In re: Jessica Lindsey May*, Case No. 23-50053-acs, DN 30, pp. 1-5 (entered June 15, 2023).  To the extent necessary, the Court makes additional undisputed facts.

managed by an Edward Jones financial advisor in Paducah, Kentucky (the "Edward Jones Accounts.")

4.      Prior to his death, the Decedent had designated the Defendant as one of the beneficiaries of the Edward Jones Accounts. Because the Decedent completed beneficiary designation forms for the Edward Jones Accounts, whatever assets were held within those accounts passed to the designated beneficiaries upon the Decedent's death and did not become part of his probate estate. In accordance with the beneficiary designations, Defendant was entitled to, shared, and received one-third of the assets of the Edward Jones Accounts upon the Decedent's death.

5.      The Decedent also owned three (3) accounts at C-Plant Federal Credit Union (the "C-Plant Accounts") in Paducah, Kentucky. The three C-Plant Federal Credit Union accounts owned by the Decedent prior to his death were: (a) a savings account; (b) a checking account; and (c) a second savings account.

6.      The C-Plant Accounts were individually owned by the Decedent and were not jointly owned by any other individual or entity. Prior to his death, the Decedent had not designated anyone to be a beneficiary of the C-Plant Accounts. Because there were no joint owners or designated beneficiaries of the C-Plant Accounts, whatever assets were held within those accounts passed into and became part of the Decedent's probate estate upon his death.

7.      The Defendant is not one of the Decedent's heirs under Kentucky's law of intestate succession. As a result, Defendant was not entitled to receive any of the assets of the Decedent's probate estate, including whatever assets did or should have passed into the probate estate from the C-Plant Accounts.

8.    As stated above, the Decedent, Thomas Wayne Kenney, died suddenly and unexpectedly from COVID-19 on Friday, November 27, 2020.

9.    On Monday, November 30, 2020, at approximately 6:00 p.m., the Decedent's Edward Jones financial advisor initiated a transfer request for Two Hundred and Twenty-Five Thousand and 00/100 Dollars ($225,000) to be transferred from the Decedent's C-Plant Checking Account to one of the Decedent's existing Edward Jones Accounts.  The transfer request was received by C-Plant the next business day on Tuesday, December 1, 2020, resulting in a transfer of $225,000 from the Decedent's C-Plant Checking Account to one of the Decedent's Edward Jones Accounts on December 1, 2020.  This transfer will be referred to as the "Transaction."

10.    Because the Transaction was not made until after the Decedent's death, the $225,000.00 constituted an asset of the Decedent's probate Estate and should not have been transferred from the C-Plant Checking Account to the Edward Jones Accounts.

11.    Following the Decedent's death, Edward Jones distributed all the proceeds in the Edward Jones Single Account to the designated beneficiaries, including the Defendant, in accordance with the beneficiary designation on file for such account. The funds at issue in the Transaction ($225,000) were distributed in equal shares to Robin Davis, Erika Guess, and the Defendant, with each of them receiving an extra Seventy-Five Thousand and 00/100 Dollars ($75,000.00) from the Edward Jones Account.

12.    The Plaintiff, in consultation with legal counsel in carrying out her duties as Administratrix of the Estate of Thomas Wayne Kenney, reviewed the Decedent's bank statements and learned that the Transaction was not made until after the Decedent's date of death.  The

4

Plaintiff determined (a) that the Transaction was invalid and should be void because it occurred after the Decedent's death, and (b) the funds totaling $225,000.00 should be repaid to the Decedent's probate estate to ultimately be distributed to the Decedent's heirs under Kentucky's law of intestate succession.

13.    By way of letters dated June 4, 2021, and June 25, 2021, the Plaintiff informed Defendant that the Transaction was made in error after the Decedent's death and that she did not have title to and was not legally permitted to receive, keep, or retain the extra $75,000 she received.  The Plaintiff demanded the Defendant return and repay $75,000 to the Decedent's probate estate.  The Defendant refused to do so.

14.    Defendant used some or all of the proceeds received from the Estate to purchase her home located at 107 Chestnut Street, Eddyville, Kentucky 42038 (the "Property"). Defendant paid $101,164.19 for the Property and, when purchased, the Property was not subject to a mortgage.  Defendant purchased the Property on March 25, 2021.

15.    On August 13, 2021, the Plaintiff commenced litigation against Defendant in McCracken County Circuit Court to recover the $75,000.  The claims made by the Plaintiff against Defendant in the state court proceedings were based on a theory of intentional tort (conversion, trover, replevin, trespass to chattel, detinue, unjust enrichment, constructive trust, etc.).

16.    On September 20, 2021, Defendant, represented by counsel, answered the Plaintiff's state court complaint denying liability.

17.    In April 2022, the Defendant's previous attorney communicated to Plaintiff's attorney that the Defendant had authorized him to settle the action with an agreed judgment being entered

in the amount of $75,000.

18.   When the Defendant failed to satisfy the settlement, the Plaintiff filed a motion in state court to enforce the settlement agreement.

19.   On July 28, 2022, the McCracken Circuit Court entered a judgment against Defendant and in favor of the Plaintiff in the amount of $75,000, plus costs and post-judgment interest accruing at a rate of six percent from the date of the entry of the judgment (the "Judgment").

20.   The state court concluded that Defendant's attorney had express authority to settle the Plaintiff's claim for $75,000.

21.   The Judgment also included the following language:

> "KRS 355.4-405, which [Defendant] cites in her second response, is not a defense to [Plaintiff's] claim.  KRS 355.4-405 is designed to protect banks who do not learn of their customer's death before paying a check from liability."

22.   Defendant did not appeal the Judgment.

23.   Prior to the Judgment, the Defendant took out a mortgage on real property with Fredonia Valley Bank in the amount of $73,000—nearly the exact same amount as the Plaintiff was seeking to recovery from the Defendant.

24.   Because the Defendant made no efforts to pay the Judgment, on October 4, 2022, the Plaintiff began a foreclosure proceeding in Lyon Circuit Court to collect upon the Judgment.

25.   On February 6, 2023, the Lyon Circuit Court granted the Plaintiff a Summary Judgment and ordered real estate to be sold to satisfy the Judgment.

26.   On February 13, 2023, Defendant filed for Chapter 7 Bankruptcy.

27.   On February 16, 2023, the Defendant filed a Motion to Avoid Lien.  The Defendant sought to avoid the Plaintiff's judgment lien, claiming that the lien impaired her exemption on the

property.

28.  The Plaintiff objected to that Motion to Avoid Lien.

29.  On March 3, 2023, the Plaintiff brought a timely adversary proceeding seeking to except the judgment from discharge pursuant to § 523(a)(6), as a debt incurred by willful and malicious injury.

30.  On June 15, 2023, this Court entered an order granting the Defendant's Motion to Avoid Judgment Lien.

31.  On March 28, 2024, the Plaintiff filed the Motion for Summary Judgment currently before the Court.  The motion was supported by several exhibits, including, but not limited to, this Court's lien avoidance order, excerpts from the Defendant's deposition, and the state court Judgment.

32.  In her September 2023 deposition, the Defendant admitted that by July of 2021, she knew that the $75,000 at issue did not belong to her.  At this time, sufficient liquid cash existed in her Edward Jones accounts to repay the estate. Despite this, she admitted that she "deliberately chose to spend that money in another way verses returning some or all of it to the estate[.]" (Ex. 4, p. 61:4-11.)

33.  In that deposition, the Defendant further admitted that she took out a mortgage against her house and instead of returning the money to the estate, she paid off a vehicle loan and built a storage shed at her home. (*Id.* pp. 50:14-51:6.)

34.  The Defendant admitted that her actions were a detriment of the probate estate. (*Id.* pp. 51:3-6, 52:17-53:15.)

35.  The Defendant stated that she would pay the Plaintiff back if she still had the funds.  The

reason for this statement according to the Defendant is that she recognized the $75,000 was not hers.  (*Id.* p.34:15-24)

36.    On April 17, 2024, the Defendant filed her response in opposition to the Plaintiff's Motion for Summary Judgment and her Counter Motion for Summary Judgment.  The Defendant's motion was supported by several exhibits.

## IV.    LEGAL ANALYSIS

The Plaintiff seeks entry of summary judgment in her favor based upon the record before the Court. She contends that the Court should find the $75,000 debt nondischargeable pursuant to 11 U.S.C. § 523(a)(6).  Under 11 U.S.C. § 523(a)(6),

> A discharge under Section 727, 1141, 1192, 1228(a), 1228(b) or 1328(b) of this title does not discharge an individual from any debt . . . . . . . .
> (6) for willful and malicious injury by the debtor to another or to the property of another entity . . .

Plaintiff contends that the debt based upon the Defendant's intentional conversion of the funds transferred after the death of the Decedent should be excepted from discharge under § 523(a)(6).

To except a debt from discharge under § 523(a)(6), the injury must be both willful and malicious.  *Markowitz v. Campbell (In re Markowitz)*, 190 F.3d 455, 463 (6th Cir. 1999).  Under Section 523(a)(6), Plaintiff must prove the following elements: (1) the Debtor's conduct was willful and malicious, (2) the creditor suffered an invasion of its legal rights or to the legal rights of its property and (3) the invasion was caused by the Debtor's conduct.  *Steier v. Best (In re Best)*, 109 F. App'x. 1, 4-6 (6th Cir. 2004).  The creditor bears the burden of demonstrating a claim under 11 U.S.C. § 523(a)(6) by a preponderance of the evidence.  *Id.*

8

A finding of conversion alone is not sufficient to satisfy the requirements of § 523(a)(6). There must be proof that the party intended to cause the harm or it was substantially certain that such harm would occur. *Markowitz*, 190 F.3d at 464; *In re Lombardi*, 263 B.R. 848, 853 (Bankr. S.D. Ohio 2001).

In Kentucky, the tort of conversion is defined as the wrongful exercise of dominion and control over the property of another. *Post Road Partners, LLC v. Walters (In re Walters)*, 559 B.R. 156 (Bankr. E.D. Ky. 2006). Conversion is an intentional tort. *Ky. Ass'n of CTYS Compensation. All Lines Fund Trustee. v. McClendon*, 157 S.W.3d 626, 632 (Ky. 2005).

In this case, while the Plaintiff has not argued that Defendant's initial receipt of the money was "wrongful" or otherwise taken from Plaintiff with some ill-intent, the Plaintiff contends that the Defendant's retention of the funds constitutes conversion.

Conversely, the Defendant makes the argument that the transfer was not inappropriate and that the funds were legally transferred. She reasons that if the funds were legally transferred to her, she could not be liable for conversion of those funds. In essence, the Defendant is challenging the underlying liability. The Defendant contends that because the transfer was lawful when authorized, the subsequent death of the Decedent did not change the character of that transaction from lawful to unlawful. Defendant cites KRS 355.4-405 in support of her position. That statute deals with a bank's potential liability when there is a death or incompetence of a customer. While the Defendant admits that the power of the guardian of the Decedent terminated with the Decedent's passing, she argues that the pre-death authorization and post death transfer were "completely legitimate."

One of the problems with the Defendant's argument is that liability has already been established in state court. On July 28, 2022, the McCracken Circuit Court entered Findings of Fact,

Conclusions of Law and Order and Judgment Enforcing Settlement. That Judgment was based upon an agreed settlement to a cause of action that included allegations of conversion.

The Court will also point out that it appears that the state court rejected the Defendant's attempt to rely upon KRS 355.4-405. In the Judgment, the state court expressly held that the statute relied upon by the Defendant was not a defense to the Plaintiff's claim. That specific issue has been considered and decided by the state court and the state court's ruling is a final decision.[2]

Defendant did not appeal or otherwise challenge the Judgment. Had the Defendant wished to challenge the conclusions of the McCracken Circuit Court, the appropriate avenue for review would have been an appeal through the Kentucky state court appeals process. This Court is not an appellate court for state court actions.

Even if this Court were not bound by the state court decision on this issue, it would still disagree with the Defendant that this particular statute relates to the issues in this case. As the Plaintiff noted in her response, KRS 355.4-405 is part of Kentucky's adoption of UCC Article 4, which pertains bank deposits and collections, which is not an issue in this case. It does not address ownership of funds after the death of customer or the transfer of funds from a credit union to a financial investment group.

The Defendant argues that this Court should ignore that Judgment and treat the issue as if it has not already been adjudicated. Defendant argues that no court of competent jurisdiction has

---

[2] It should also be noted that this Court has also ruled on this issue. In its order on the Motion to Avoid Lien, this Court made a factual finding that "Because the Transaction was not made until after the decedent's death, the $225,000.00 constituted an asset of the decedent's probate Estate and should not have been transferred from the C-Plant Checking Account to the Edward Jones Accounts." June 15, 2023 Order (Doc. No. 30) (emphasis added) . Simply speaking, this Court has ruled on this issue as well. Neither party appealed or otherwise challenged this Court's lien avoidance order.

made a final decision or judgment based on the merits of the case as they pertain to the transfer of funds. Defendant does not explain why or how the McCracken Circuit Court was not a court of competent jurisdiction or how the final judgment is somehow non-binding.

Under the Full Faith and Credit Act, "judicial proceedings ... shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken." 28 U.S.C. § 1738. This means that "a federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Southfield Educ. Ass'n v. Southfield Bd. of Educ.*, 570 Fed.Appx. 485, 488 (6th Cir.2014) (*quoting Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984)). Accordingly, *res judicata* requires this Court to give the same effect to the state court judgment as would another state court. Moreover, the fact that a case was resolved through a judgment based upon a settlement will not prevent it from operating as a final judgment.

Even if this Court did not rely upon the state court Judgment, it would still find that the Defendant converted the extra $75,000 she received after the Decedent's death. As stated above, conversion is defined as the wrongful exercise of dominion and control over the property of another. *Post Road Partners, LLC v. Walters (In re Walters)*, 559 B.R. 156 (Bankr. E.D. Ky. 2006). "All that is necessary is that the defendant exercise dominion and control over the property which is inconsistent with the plaintiff's rights." *Mansbach v. Prescott, Ball & Turben*, 598 F.2d 1017, 1027 (6th Cir. 1979).

Here, at the moment of the Decedent's death, ownership of the funds passed to his probate estate. *See* KRS 391.030 ("where any person dies intestate as to his or her personal estate, or any

part thereof, the surplus, after payment of funeral expenses, charges of administration, and debts, shall pass and be distributed" according to real estate intestate succession); *Edinger v. Finn's Adm'r*, 252 S.W.2d 47, 49 (Ky. 1952) ("title to the personal property of an intestate vests in the administrator"); *Stockyards Bank of Louisville, Ky., v. Hudson's Adm'x*, 13 S.W.2d 499, 500 (Ky.App. 1929) ("However, persons entitled to personal property as heirs or distributees acquire a vested equitable right immediately on the death of the intestate, and on distribution their title relates back to the intestate's death . . ..").  The key issue is what property was owned by the Decedent at the time of his death.  *Gibson's Adm'r v. Gibson*, 43 S.W.2d 343, 345 (Ky.App. 1931) ("All personal property owned by [decedent] <u>at the time of his death</u>, including rents and royalties which accrued during his lifetime, passed to his personal representative as assets of his estate . . ..) (emphasis added).  Any transfer of assets after this time deprived the probate estate of assets that rightfully belonged to the Decedent's intestate heirs.  Thus, the Defendant's act of possessing the funds, which clearly belonged to the Decedent's probate estate, amounted to conversion under state law.

 This Court must now determine whether the damages resulting from this conversion should be discharged in bankruptcy.  Section 523(a)(6) excepts from discharge any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity."

The United States Supreme Court articulated the standard for determining dischargeability under § 523(a)(6) in *Kawaauhau v. Geiger*, 523 U.S. 57, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998).  The Court held that to except a debt from discharge under § 523(a)(6), the debtor must have engaged in a "deliberate and intentional injury."  *Id.* at 61, 118 S.Ct. 974.  "Only acts done with the intent to cause injury—and not merely acts done intentionally—can cause willful and malicious injury." *Markowitz v. Campbell (In re Markowitz)*, 190 F.3d at 455, 463 (6th Cir.1999).

In this Circuit, under *Markowitz*, the Creditor must demonstrate that the debtor either (1) intended to cause injury to the Creditor or to the Creditor's property, or (2) engaged in an intentional act from which the debtor believed injury would be substantially certain to result. *Id.* at 464. Courts in this jurisdiction have repeatedly held that debts arising from acts constituting conversion satisfy the "willful and malicious" injury criteria of 11 U.S.C. § 523(a)(6). *See Ryan v. Morris*, 579 B.R. 422 (Bankr. W.D. Ky. 2017); *Steier v. Best (In re Best)*, 109 Fed, App'x. 1, 5 (6th Cir. 2004).

Normally, in a § 523(a)(6) case, the debtor is unlikely to admit that he or she intended to cause injury, or that he or she was substantially certain that injury would result. *In re Sweeney*, 264 B.R. 866, 872 (Bankr. W.D. Ky. 2001). In those situations, a court must use circumstantial evidence to review a debtor's state of mind. *Id.*

In this case, however, such use of circumstantial evidence is not necessary. The Defendant has admitted in her sworn deposition that she recognized that the $75,000 in issue was not hers. (Defendant's Depo. Ex. 4, p.34:15-18). Rather than repaying the funds, the Defendant agreed that she "deliberately chose to spend that money in another way verses returning some or all of it to the estate[.]" (*Id.* p. 61:4-11). She agreed that this was to the detriment of the estate. (*Id.* pp. 51:3-6, 52:17-53:15).

Here, the Court finds that the Plaintiff has met its burden and the record sufficiently demonstrates that the Defendant wilfully and maliciously injured the Plaintiff. Defendant intentionally retained the erroneously paid funds even after realizing that they had been wrongfully paid to her. The fact that she was not responsible for the erroneous payment is irrelevant. It is her wrongful retention that constitutes the willful and malicious injury. The Defendant knew that her actions would injure Plaintiff. There is no way to examine these facts and not conclude that

13

Defendant intended to injure Plaintiff. The Court can certainly find that Defendant knew her actions were substantially certain to injure the Plaintiff. Therefore, the Court concludes that the Defendant's conversion of the funds caused a willful and malicious injury to Plaintiff.

## V.    CONCLUSION

For the above reasons, the Court finds that Defendant caused a willful and malicious injury to Plaintiff by converting the $75,000 erroneously paid for her own use. Therefore, the $75,000 debt owed to Plaintiff by the Defendant is excepted from discharge pursuant to 11 U.S.C. § 523(a)(6) as a willful and malicious injury. A separate order will be entered in accordance with this Memorandum.

Alan C. Stout
United States Bankruptcy Judge

Dated: May 13, 2024

## UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF KENTUCKY

| | |
|---|---|
| In re:                                                     ) | |
|                                                             ) | |
| JESSICA LINDSEY MAY                            ) | CASE NO. 23-50053 |
|                                                             ) | CHAPTER 7 |
|                          Debtor                   ) | |
| _____) | |
|                                                             ) | |
| ROBIN DAVIS, Administratrix of the Estate of   ) | |
| THOMAS WAYNE KENNEY                     ) | |
|                          Plaintiff.               ) | |
| vs.                                                       ) | A.P. No.  23-5003 |
| JESSICA LINDSEY MAY                            ) | |
|                          Defendant.             ) | |
| _____          ) | |

### ORDER

Pursuant to the Court's Memorandum entered this same date and incorporated herein by reference, and the Court being otherwise sufficiently advised,

**IT IS HEREBY ORDERED AND ADJUDGED** that the Plaintiff's Motion for Summary Judgment is **GRANTED**.

**IT IS FURTHER ORDERED** that the $75,000 owed to Plaintiff by the Defendant is nondischargeable pursuant to 11 U.S.C. § 523(a)(6).

**IT IS FURTHER ORDERED** that the Defendant's Motion for Summary Judgment is **DENIED**.

This is a final and appealable order, and there is no just cause for delay.

Alan C. Stout
United States Bankruptcy Judge

Dated: May 13, 2024